DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
ELIZABETH OFFEN-BROWN KLEIN (SBN 279077)
eklein@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

Attorneys for Plaintiff
ServiceMax

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICEMAX,<br><br>            Plaintiff,<br><br>  v.<br><br>ECLIPSE IP LLC,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT FOR DECLATORY JUDGMENT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff ServiceMax ("ServiceMax"), for its Complaint against Defendant Eclipse IP LLC ("Eclipse") alleges as follows:

## NATURE OF THE ACTION

1. This is an action brought by ServiceMax to obtain declaratory judgment that Eclipse has no rights against ServiceMax regarding the following patents ("Patents-in-Suit") pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. § 2201:

    A. U.S. Patent No. 7,064,681, entitled "Response Systems and Methods for Notification Systems," issued on June 20, 2006 ("the '681 patent"). A true and correct copy of the '681 patent is attached as Exhibit 1.

    B. U.S. Patent No. 7,113,110, entitled "Stop List Generation Systems and Methods Based Upon Tracked PCD's and Responses from Notified PCD's," issued on September 26, 2006 ("the '110 patent"). A true and correct copy of the '110 patent is attached as Exhibit 2.

    C. U.S. Patent No. 7,119,716, entitled "Response Systems and Methods for Notification Systems and Modifying Future Notifications," issued on October 10, 2006 ("the '716 patent"). A true and correct copy of the '716 patent is attached as Exhibit 3.

## THE PARTIES

2. ServiceMax is a corporation organized and existing under the laws of the State of Delaware, with principal place of business in California. ServiceMax is a field service software company.

3. On information and belief, Eclipse IP LLC is a company organized under the laws of Florida and having an address at 711 SW 24th, Boynton Beach, Florida 33435. On information and belief, Eclipse is the owner of the '681 patent, the '110 patent, and the '716 patent.

4. On information and belief, Eclipse's registered agent and purported managing member is Pete A. Sirianni III. Eclipse's registered corporate address in Delray Beach, Florida is, according to Palm Beach County tax records, a single-family house in a

residential neighborhood purportedly owned by Mr. Sirianni.

5. Eclipse claims to be the owner by assignment of the right, title and interest of at least twenty issued United States Patents, including the Patents-in-Suit.

6. On information and belief, Eclipse does not manufacture, produce, and/or sell any products or services.

## JURISDICTION AND VENUE

7. This lawsuit is a civil action arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, and the Declaratory Judgment Act, 35 U.S.C. § 2201. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This court has personal jurisdiction over the Defendant pursuant to the laws of the State of California, including California's long-arm statute, California Code of Civil Procedure § 410.10.

9. Eclipse has filed over 35 cases asserting patent infringement in this District, 19 of which involved one or more of the Patents-In-Suit.

10. Upon information and belief, Eclipse is in the business of patent licensing through the threat of litigation.

11. Upon information and belief, sending letters threatening patent litigation is a key part of Eclipse's business model.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## ECLIPSE'S THREATS AGAINST SERVICEMAX

13. On or about March 14, 2014, Matthew S. Harman of the law firm Harman Law LLC, counsel for Eclipse, sent a letter to W. Michael McKinley, President of McKinley Equipment Corporation ("McKinley"). The Harman letter asserts, among other things, that McKinley infringes the Patents-in-Suit, warns that Eclipse "aggressively litigates patent infringement lawsuits," and gives April 14, 2014 as a cutoff date, after which Eclipse "assume[s] that [McKinley is] not interested in resolving this matter without litigation." A true and correct copy of that letter is attached hereto as Exhibit 4.

14. In the Harman letter, Eclipse alleged that McKinley's "automated mobile workforce management system infringes multiple patent claims in at least several of Eclipse IP's patents," including the Patents-in-Suit.

15. In subsequent communications with Eclipse, McKinley advised Eclipse that McKinley did not infringe the Patents-In-Suit.

16. McKinley purchases (as a software service) the mobile workforce management system accused by Eclipse from ServiceMax.

17. ServiceMax sells the software service accused by Eclipse to McKinley and other customers.

18. On April 29, 2014, McKinley advised Eclipse that "ServiceMax has a contractual right to control the defense and settlement of any litigation" and "ServiceMax will vigorously defend McKinley against any litigation brought by Eclipse concerning these patents based on its software."

19. On May 13, 2013, Eclipse filed a lawsuit in this District against McKinley, alleging that McKinley's use of ServiceMax products infringed the Patents-in-Suit: *Eclipse IP LLC v. McKinley Equipment Corp.*, Case No. 8:14-CV-00742 (C.D. Cal.) ("*Eclipse v. McKinley*"). On June 13, 2014, Eclipse served the complaint on McKinley.

20. Eclipse's infringement contentions in *Eclipse v. McKinley* state that "Eclipse believes that at least some portion of MEC's infringing system was provided by ServiceMax, Inc." Eclipse's infringement contentions contain screenshots from ServiceMax's website.

21. ServiceMax is defending and indemnifying McKinley with respect to *Eclipse v. McKinley*.

22. ServiceMax has obligations to defend and indemnify other ServiceMax customers who purchase the ServiceMax software service accused by Eclipse.

23. Eclipse's letter and other communications with McKinley, Eclipse's lawsuit against McKinley, Eclipse's reliance on ServiceMax information in its infringement contentions, ServiceMax's indemnification of McKinley, and ServiceMax's

indemnification obligations to other customers create an actual case or controversy as to whether ServiceMax and ServiceMax's customers are infringing any valid claim of the Patents-in-Suit.

24. Eclipse's letter and other communications with McKinley, Eclipse's lawsuit against McKinley, Eclipse's reliance on ServiceMax information in its infringement contentions, ServiceMax's indemnification of McKinley, and ServiceMax's indemnification obligations to other customers show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

25. ServiceMax continues to use and sell automated mobile workforce management technology that Eclipse has accused McKinley of using to infringe the Patents-in-Suit.

## COUNT I

## DECLARATORY JUDGMENT OF NONINFRINGEMENT

26. Paragraphs 1-25 are incorporated by reference as if fully restated herein.

27. Eclipse has asserted that ServiceMax's software service infringes claims of the Patents-in-Suit by using automated mobile workforce technology.

28. ServiceMax's automated mobile workforce technology does not infringe any valid and asserted claims of the Patents-in-Suit because they do not satisfy all the limitations of those claims.

29. Based on Eclipse's letter and other communications with McKinley, Eclipse's lawsuit against McKinley, Eclipse's reliance on ServiceMax information in its infringement contentions, ServiceMax's indemnification of McKinley, and ServiceMax's indemnification obligations to other customers, an actual case or controversy exists as to whether ServiceMax infringes any valid or enforceable claims of the Patents-in-Suit, and ServiceMax is entitled to a declaration that it does not infringe any valid claim of the Patents-in-Suit.

## COUNT II

## DECLARATORY OF INVALIDITY

30. Paragraphs 1-29 are incorporated by reference as if fully restated herein.

31. All of the claims of the Patents-In-Suit are invalid under the United States Patent Act, including pursuant to 35 U.S.C. §§ 101, 102, 103, and 112.

32. All of the claims of the Patents-In-Suit are invalid pursuant to 35 U.S.C. §101 because they purport to claim unpatentable abstract concepts.

33. All of the claims of the Patents-In-Suit are invalid pursuant to 35 U.S.C. §§ 102 and/or 103 because they are anticipated and/or rendered obvious by prior art. ServiceMax has identified prior art patents, publications, and prior systems that, either alone or in combination, teach every element of every claim of the Patents-In-Suit, thus invalidating them.

34. On information and belief, all of the claims of the Patents-in-Suit are invalid under 35 U.S.C. § 102 for the following reasons:

- The claims of the Patents-in-Suit are invalid because the claimed inventions were known to or used by others in the United States before the dates of invention of the Patents-in-Suit.

- The claims of the Patents-in-Suit are invalid because the claimed inventions were already patented or described in a printed publication before the dates of invention of the Patents-in-Suit.

- The claims of the Patents-in-Suit are invalid because the claimed inventions were already patented or described in a printed publication more than a year before the effective filing dates of the applications for the Patents-in-Suit.

- The claims of the Patents-in-Suit are invalid because the claimed inventions were publicly used, sold, or offered for sale in the United States more than one year before the effective filing dates of the applications for the Patents-in-Suit.

- The claims of the Patents-in-Suit are invalid because the claimed inventions were described in a patent granted on an application for patent by another filed in the United States and the application was filed before the claimed inventions were reduced to practice and/or the filing dates of the applications

for the Patents-in-Suit.

35. On information and belief, all of the claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 for the following reasons:

- The claims of the Patents-in-Suit are invalid because the claimed inventions would have been obvious to persons having ordinary skill in the art at the time the inventions were made in the field of the inventions.

- The claims of the Patents-in-Suit are invalid because at the time of the claimed inventions and/or critical date of the Patents-in-Suit a person having ordinary skill in the field of the inventions would have been prompted to combine known elements in a way the claimed inventions do, taking into account factors including but not limited to:

    1) the claimed inventions were merely the predictable result of using prior art elements according to their known function(s);

    2) the claimed inventions provide an obvious solution to a known problem in the relevant field;

    3) the prior art teaches or suggests the desirability of combining elements claimed in the claimed inventions;

    4) the prior art does not teach away from combining elements in the claimed inventions; and

    5) it would have been obvious to try the combinations of claimed elements, to satisfy a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

36. All of the claims of the Patents-in-Suit are invalid pursuant to 35 U.S.C. § 112 because they are indefinite, not enabled, and/or lack sufficient written description.

37. Based on Eclipse's letter and other communications with McKinley, Eclipse's lawsuit against McKinley, Eclipse's reliance on ServiceMax information in its infringement contentions, ServiceMax's indemnification of McKinley, and ServiceMax's indemnification obligations to other customers, an actual case or controversy exists as to whether ServiceMax and ServiceMax's customers infringe any valid or enforceable claim

of the Patents-in-Suit, and ServiceMax is entitled to a declaration that the Patents-in-Suit are invalid.

## PRAYER FOR RELIEF

WHEREFORE, ServiceMax respectfully requests that:

A. Judgment that ServiceMax does not infringe any valid claim of the Patents-in-Suit;

B. A judgment that the asserted claims of the Patents-in-Suit are invalid and/or unenforceable;

C. That this case be found an exceptional case under 35 U.S.C. § 285, entitling ServiceMax to be awarded the attorney fees, costs, and expenses that it incurs in prosecuting this action;

D. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

ServiceMax hereby requests a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), on all issues so triable.

Dated: July 3, 2014

DURIE TANGRI LLP

By: _____
DARALYN J. DURIE
ELIZABETH OFFEN-BROWN KLEIN

Attorneys for Plaintiff
ServiceMax